**Cynthia Annette SPEARS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–93–00165–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 8, 1994.

Discretionary Review Refused
April 26, 1995.

Arlan J. Broussard, Houston, for appellant.

John B. Holmes, Jr., Dan McCrory, Jay Hileman, Houston, for appellee.

Before DUGGAN, MIRABAL and WILSON, JJ.

## OPINION

WILSON, Justice.

After a jury found appellant, Cynthia Annette Spears, guilty of fraudulent use of a debit-credit card, the trial court assessed punishment at three-years confinement. We affirm.

In her sole point of error, appellant contends that the trial court erred in overruling her *Batson*[1] motion. To invoke the protections of *Batson,* the defendant must first raise an inference of purposeful discrimination through the State's use of its peremptory strikes. *Satterwhite v. State,* 858 S.W.2d 412, 423 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993). Once the defendant raises such an inference, the burden of production shifts to the prosecutor to give racially neutral explanations for the strikes. *Id.* Once the prosecutor gives racially neutral explanations, the burden shifts back to the defendant to persuade the trial court that the neutral explanation is really a pretext for discrimination. *Id.*

For claims made under TEX.CODE CRIM. P.ANN. art. 35.261 (Vernon 1989) and *Batson,* we will reverse the trial court's finding of no purposeful discrimination only if it is "clearly erroneous." *Hill v. State,* 827 S.W.2d 860, 865 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). We must view the record in the light most favorable to the trial judge's ruling; we will not disturb that ruling unless we are "left with a firm conviction that a mistake has been committed." *Harris v. State,* 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). In determining whether the trial judge's finding was clearly erroneous, we consider the challenged prospective juror's voir dire as a whole together with other relevant circumstances of the panel's voir dire. We will accord due deference to the trial judge's ruling. *Sterling v. State,* 830 S.W.2d 114, 118–19 (Tex.Crim.App.), *cert.*

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

*denied,* — U.S. ——, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992).

After the questioning of the panel but before the swearing of the jury, the court held a *Batson* hearing. In an attempt to raise the inference of purposeful discrimination through the State's use of its peremptory strikes, defense counsel complained that:

> [b]asically, we see a pattern has been set, Your Honor. Number 9, a black female minority, number 10, mexican-american female, which is a minority. Number 11, which is a black male, whom is also a minority. Number 14, which is a mexican-american male, which is also a minority. Number 15, which is a black female, also a minority.
>
> . . . .
>
> Number 21, which is a black female, also a minority. It causes the defense some concern here, Your Honor. And there were a couple of these people that the State did not even call forth during the voir dire process to attempt to challenge them for cause or anything and we would just like for them to state in the record why some minorities were struck from this jury panel.

Appellant contends, and the State does not dispute, that all minorities were eliminated from the jury.

 Although the prosecutor and the trial judge agreed that the defendant had not raised the inference of purposeful discrimination through the State's use of its peremptory strikes, the prosecutor proceeded to articulate the reasons for the peremptory challenges, and the trial court ruled on the ultimate question of intentional discrimination. A prima facie showing is that minimum quantity of evidence necessary to support a rational inference that the allegation of purposeful discrimination is true. *Harris v. State,* 827 S.W.2d 949, 955 n. 4 (Tex.Crim. App.1992). The initial burden in establishing a prima facie case is not onerous. *Dewberry v. State,* 776 S.W.2d 589, 591 (Tex.Crim.App. 1989). Moreover, even if appellant did not raise an inference, the preliminary issue of whether the defendant has made a prima facie showing becomes moot where the prosecutor articulates his reasons for the challenged peremptory strike and the trial court rules on the ultimate question of intentional discrimination. *See Hill,* 827 S.W.2d at 865. Furthermore, the State does not challenge the appellant's prima facie case on appeal.

The prosecutor provided the following as race-neutral explanations for excluding six minority veniremembers. Juror number nine, B—— J—— B——, was struck because

> [s]he had a brother who was convicted of burglary and that might give her problems in being able to convict someone and that she might not be able to be fair to the State. I called her up and moved to strike her with the intention of moving to strike her for cause. And at that point when she came in individually she indicated that she had changed her mind and said she could be fair, but I still had my suspicions.

Juror number ten, E—— B—— C——, was struck because

> [s]he generally indicated to me that she disagreed with the law in regards to the fact that value is not an element in a credit card case. She disagreed with the fact that someone could be charged and convicted of a felony for using someone's credit card to steal less than $750. When I called her in and talked to her individually she still indicated that's how she felt, but after some cajoling by the defense attorneys she indicated that she still agreed [sic] with the law but would be able to follow the law.

Juror number eleven, J—— R—— L——, was struck because

> [h]e indicated that he disagreed with the law as it stood in regard to value on a credit card case. He said he didn't think it was fair that someone should be charged with a felony because they stole less than the felony amount with a credit card, because their offense happened to be with the credit card.... Also had a daughter cleared by the grand jury for some type of felony offense.

Juror number fourteen, W—— J—— G——, was struck

> [p]eremptorily after trying to strike him for cause. He and I had much discussion, both with the panel in general and with

him individually about circumstantial evidence. Several hypotheticals and he indicated through all of those hypotheticals that he would require the State to have an eyewitness. It was only after much discussion and questioning from the defense attorneys that he did indicate that there might be some seemingly remote fact situation in which he might not require the State to have an eyewitness. I'd argue to the Court that he just barely got under the line of being struck for cause and since he had indicated that he was at least uncomfortable with the law as it concerns circumstantial evidence, I struck him peremptorily.

Juror number fifteen, D__ L__ T__, was struck because

[s]he also had problems with circumstantial evidence. I talked to her about the hypotheticals and she had indicated to me that she agreed with Mr. [W__ G__] and that she would require the State to have an eyewitness in most circumstantial-type cases. I wouldn't submit to the Court that I had grounds to strike her for cause because she did say there were some circumstantial evidence situations in which she could find someone guilty without an eyewitness. But she was reluctant and hesitant too. She indicated hesitance and reluctance to convict without an eyewitness.

Juror number twenty-one, E__ B__, was struck because

[s]he indicated that she had several lie detector tests and that she never passed any of them, even though she was telling the truth.... But she also indicated that she had a brother who was currently in jail and was falsely accused and that the system had failed him. And though she said she could be fair and though I can see I did not have grounds, I can see how the Court would rule that I didn't have grounds to strike her for cause. She did seem to be reluctant to find someone guilty based on the prior bad experience she's had in her family.

Appellant then objected to the impaneled jury and requested that another panel be brought forward. The trial court denied appellant's motion for a new jury panel, and found that:

[a]ll the strikes made, peremptory strikes made by the State were for good and sufficient reason; that they were racially neutral, that none of the strikes were made for any racial reasons and that the proof or attempted proof of any deprivation of any rights of the defendant or to any of the jurors who's absent in this case. The Court finds that the State followed the law in regards to selection of the jury and did not make any strikes based on race or prejudice, either against the jurors or against the defendant.

■ Appellant argues in her brief that the prosecutor's articulated explanations for the peremptory strikes were pretextual, based on the erroneous reasons given by the prosecutor. The appellant also contends a comparison of the minority veniremembers who were struck and the non-minority veniremembers who were not struck reveals racial bias. At trial, she offered no comparison argument to show pretext, and did not cross-examine the State as to the race-neutral explanations given for the peremptory strikes. The State contends that appellant may not offer a comparison argument for the first time on appeal. This argument was resolved against the State in *Young v. State*, 826 S.W.2d 141, 146 (Tex.Crim.App.1991), where the court reversed a case in which the court of appeals had refused to consider appellant's comparisons in reviewing the trial court's ruling. The court remanded for the court of appeals to consider "whether the trial judge's ruling on appellant's Batson motion was supported by the record and therefore not clearly erroneous." *Id.* at 147. An appellate court may not reverse a trial court's findings based upon information that was not introduced into evidence or elicited before the trial judge during the voir dire, but an appellant is entitled to rely upon evidence in the record from voir dire when making a comparison argument before an appellate court that certain veniremembers were excluded by the prosecuting attorney on the basis of race. *Vargas v. State*, 838 S.W.2d 552, 557 (Tex.Crim.App.1992). The burden of persuasion remains with the appellant to establish that a prohibited motive lies

behind the use of a peremptory challenge by the State. *Camacho v. State,* 864 S.W.2d 524, 529 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). Finally, "[t]he United States Constitution is offended by as little as a single strike exercised on the basis of race." *Linscomb v. State,* 829 S.W.2d 164, 166 (Tex.Crim.App.1992).

 We will review the prosecutor's articulated race-neutral reasons for the peremptory strikes to determine whether they were erroneous. We first examine the prosecutor's peremptory strike of juror number nine, Ms. B__ J__ B__, who was allegedly struck because, as the prosecutor testified:

> [s]he had a brother who was convicted of burglary[2] and that might give her problems in being able to convict someone and that she might not be able to be fair to the State. I called her up and moved to strike her with the intention of moving to strike her for cause. And at that point when she came in individually she indicated that she had changed her mind and said she could be fair, but I still had my suspicions.

In response to the prosecutor's general question whether any of the veniremembers or their relatives had been charged with a crime, the following exchange occurred between juror number nine and the prosecutor, Mr. Jay Hileman:

> Juror: I have a brother, he's still found guilty.
>
> Mr. Hileman: Is there anything about that that would affect the way you look at the criminal justice system?
>
> Juror: No, it's not.
>
> Mr. Hileman: You feel like you couldn't find somebody guilty even if the facts warranted it because your brother has been charged with something?
>
> Juror: No.

When juror number nine was questioned individually out of the presence of the other veniremembers, the following testimony was given:

> Mr. Hileman: Ms. [B__ B__], when I was talking you had mentioned that a member of your family had had a prior run-in with the judicial system, am I correct; or stating in my recollection you said for that reason and for another reason, I can't remember, that you might have trouble following—
>
> Juror: I said wouldn't bother me at all.
>
> Mr. Hileman: It would not?
>
> Juror: Right.
>
> Mr. Hileman: In an appropriate case you felt like if the evidence was there could you find somebody guilty?
>
> Juror: Yes.
>
> Mr. Hileman: Is there anything about this offense, the person is alleged to have committed debit/credit card abuse. Anything about that that would make you hesitant or unfair to the state?
>
> Juror: No, it wouldn't.

We find the record does not literally support the prosecutor's explanation for the peremptory strike. Although juror number nine indicated her brother had been found guilty of an offense, the record does not reflect she indicated the particular crime for which he was convicted. When questioned in voir dire, juror number nine also stated her brother's conviction would not affect the way she looked at the criminal justice system.

The prosecutor also asked juror number nine whether she felt she could not find someone guilty if the facts warranted it. She responded in the negative, and he did not question her further about her answer until she was questioned individually. On the face of the record, the negative answer to the prosecutor's question can be interpreted in two ways. In reviewing the questions asked and answers given in the voir dire proceeding, we have only the bare record before us, and do not have the benefit of hearing the inflections, emphasis or tone of voice from the participants in making our determination, as the trial court did.

From the individual questioning of juror number nine, the trial court, hearing the quizzical responses of the prosecutor, could

---

**2.** The prosecutor did not explain how he drew his impression that this juror's brother was convicted of burglary, and it is unclear from the record how he reached that conclusion.

have reasonably concluded the prosecutor thought she had earlier indicated to him an unwillingness to convict someone based on the experience of a member of her family. The fact the prosecutor asked the question twice is some evidence of confusion as to the meaning of her prior answers. The perception of an unwillingness to convict was apparently the prosecutor's chief concern with this juror, because it is the only matter he addressed when questioning juror number nine individually. For this reason, the prosecutor apparently thought juror number nine was changing her response to his inquiry when she was questioned individually, and did not question her further.

■ The court of criminal appeals has held that it is a sufficiently race-neutral explanation for a prosecutor to strike a veniremember whose relative was convicted of a crime. *Harris,* 827 S.W.2d at 954–55. The State is also allowed to make peremptory strikes based on the prosecutor's legitimate "hunches" so long as racial discrimination is not a motive. *Keeton v. State,* 749 S.W.2d 861, 865 (Tex.Crim.App.1988); *Jones v. State,* 781 S.W.2d 415, 418 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). When a prosecutor indicates a "hunch" about a prospective juror, the issue becomes whether it was race-neutral or motivated by racial discrimination. *York v. State,* 764 S.W.2d 328, 330–31 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). The prosecutor's explanation at the *Batson* hearing indicates his belief, or "hunch," that because of her brother's conviction, juror number nine might not be able to convict someone, and his possible misperception that she had changed her answer regarding her willingness to convict. The trial court, having listened to the prosecutor's explanation and the entire voir dire proceeding, found that there was no purposeful discrimination by the prosecutor in exercising a peremptory strike against juror number nine. Viewing the record in the light most favorable to the trial court's ruling, we are not left with the impression that it committed error. We hold that the trial court's finding that the prosecutor's peremptory strike of juror number nine was not motivated by racial discrimination is not clearly erroneous.

■ Appellant argues that a comparison of juror number nine's responses to those of juror number 19, Ms. P— B— S—, reveals that the prosecutor's explanation for striking juror number nine is pretextual and that the prosecutor's actions in doing so amounted to disparate treatment, because juror number 19 possessed the same characteristics as juror nine, but was not struck. Juror number 19 was a non-minority veniremember who was not struck and who eventually served on the jury. The following exchange took place during voir dire between the prosecutor and juror number 19.

Mr. Hileman: Third row? Yes, ma'am.

Juror: I have a nephew who was charged with DWI.

Mr. Hileman: Okay. And you're Ms. [P— S—]?

Juror: Yes, sir.

Mr. Hileman: Was he convicted of that?

Juror: Yes, sir.

Mr. Hileman: Do you think he was treated fairly or unfairly?

Juror: I think he was treated very fairly.

The prosecutor did not call juror number 19 to the bench for individual questioning. Although she indicated her nephew had been convicted of an offense, it is also apparent from the record that juror number 19 was unambiguous and unequivocal in her response to the question by the prosecutor.

Appellant also points to the State's failure to strike two other non-minority veniremembers whose relatives had been convicted of an offense as evidence of disparate treatment by the prosecutor. Ms. W— P—, juror number six, when answering questions posed by the prosecutor identical to those asked of juror number 19, stated her brother-in-law was convicted of theft by check and also stated she thought he was treated fairly. Juror number six was not called for individual questioning but was struck by appellant's counsel. Ms. W— S—, juror number eight also stated her brother was charged with an offense and that she felt he had been treated very fairly by the system. While it is true that the State did not exercise a peremptory strike against juror number eight, appellant fails to note that the prosecutor successfully

challenged and struck juror number eight for cause.

■ Disparate treatment cannot automatically be imputed in every situation where one of the State's reasons for striking a veniremember would technically apply to another veniremember whom the State found acceptable. *Cantu v. State*, 842 S.W.2d 667, 689 (Tex.Crim.App.1992). A prosecutor's decision to strike a particular veniremember is not always susceptible to rigid quantification; rather, it is a fluid process, often hinging on the interaction of a number of variables and permutations. *Id.* In this case, the prosecutor offered more than the mere fact of her brother's conviction as a race-neutral explanation for excluding juror number nine, and included his perception she had indicated an unwillingness to convict and had then changed her answer. We do not find it is sufficient to establish disparate treatment on these facts simply because other veniremembers possessed one or more of the characteristics the State found objectionable in *juror number nine.*

■ As noted above, the State struck Ms. E— C—, juror number 10, because the prosecutor felt she disagreed with the law as it would be applied in the case. The following exchange occurred between juror number 10 and the prosecutor at voir dire:

Mr. Hileman: Okay. I'm going to mess up with these names because I wrote you down as though you're on ten. Yes, how do you feel about it?

Juror: Well, I don't feel that, you know, if she had to use that card for $5 or $10 I think that's a very severe offense for her.

Mr. Hileman: Could you render a verdict in accordance with that law that you don't agree with?

Juror: Well, the law says we should.

When questioned out of the presence of the other veniremembers, the following testimony was given:

Mr. Hileman: Ms. [E— C—], when I was talking to you I mentioned that even if someone just steals $5 with a credit card that that's a felony; you remember talking about that?

Juror: Yes.

Mr. Hileman: And you indicated to me that you took your position on our democracy that you disagree with that law, is that true?

Juror: But I mean, I feel yeah, I do disagree.

Mr. Hileman: If you were on a jury and someone was charged with that offense and you felt like the evidence substantiated the fact that they had broken that law, seeing as how you disagree with the law would you feel uncomfortable in bringing a guilty verdict?

Juror: Yes, I would.

The Court: Ma'am?

Juror: Yes.

The Court: Yes, you would have difficulty?

Juror: Yes, I think I would.

Mr. Hileman: Because you disagree with the law in that situation as far as being put in a position to pass judgment on that law makes you uncomfortable, doesn't it fall from that then that you would be unfair to the state in this type of case?

Juror: Yes, I think I would.

Both the trial court and counsel for appellant attempted to rehabilitate juror number 10, and she later stated she could find someone guilty if the evidence warranted it. Based on her earlier responses, however, the trial court could have reasonably concluded that the prosecutor had a legitimate belief that juror number 10 could not be fair to the State's case based on her expressed disagreement with the law.

■ It is a sufficiently race-neutral explanation for a peremptory strike if the veniremember expresses opposition to the law as enacted. *See Harris*, 827 S.W.2d at 955 (veniremember properly struck because of opposition to death penalty); *Tennard v. State*, 802 S.W.2d 678, 681–82 (Tex.Crim.App. 1990) (veniremember properly struck because she was opposed to death penalty).

The prosecutor's explanation for the peremptory strike of juror number 10 is supported by the record. Therefore, we hold that the trial court's finding was not clearly erroneous.

Appellant contends that the State's explanation for striking juror number 10 is pretextual because the prosecutor did not exercise a peremptory strike against Ms. J___ K___, juror number 29, a non-minority venire-member who also expressed disagreement with the law regarding debit-credit card abuse. We note that contrary to appellant's contention, the record reflects the State did peremptorily strike juror number 29.

■ Appellant also argues the State improperly struck Mr. J___ L___, juror number 11. At the *Batson* hearing, the prosecutor stated he peremptorily struck juror number 11 because the juror disagreed with the law regarding the classification of debit-credit card theft as a felony regardless of the amount stolen. The State also included in its explanation the fact that Mr. J___ L___'s daughter had been cleared by a grand jury for some type of felony offense as an explanation for striking him.

In questioning the entire venire panel during voir dire, the State posed some questions to the veniremembers regarding the fact that the Texas Penal Code classifies all theft by a debit-credit card as a felony, regardless of the amount stolen. TEX.PENAL CODE ANN. § 32.31(d) (Vernon 1974). The record indicates a lively discussion between the prosecutor and several unidentified veniremembers who expressed some disagreement with the law as enacted, because they stated it would be difficult for them to find a hypothetical defendant guilty of a felony, when that defendant had stolen only $5 or $10 with a debit-credit card. Appellant does not directly challenge the State's explanation that juror number 11 expressed disagreement with the law as it regards debit-credit card theft, and only points to an exchange between the prosecutor and juror number 11 as evidence that the juror could have, in fact, been fair to the State's case. When the prosecutor asked the venire panel whether any of them had relatives who had been charged with an offense, the following exchange occurred:

Mr. Hileman: . . . Mr. [J___ L___]?

Juror: I'm one of them.

Mr. Hileman: Yes, sir. You mind telling me what that is?

Juror: I had a daughter that was charged with a crime but she was cleared by a grand jury and I think the system worked for her.

Mr. Hileman: So you feel like she was treated fair?

Juror: Sure she was. No billed.

Mr. Hileman: Is there anything at all about that experience that might affect the way you look at me presenting this case?

Juror: Well, I thought the system worked slow but anything legal now—I'm not being funny, anything legal does take time. I know I do union representation, I have to file papers and stuff and I understand anything legal takes time.

As we have noted above, it is a sufficient race-neutral explanation for a peremptory strike if the veniremember expresses opposition to the law as enacted or if the venire-member's relative was convicted of a crime. Although juror number 11 stated his daughter was not convicted of a crime, when questioned by the prosecutor about whether this experience with his daughter would affect the way he viewed the State's presentation of its case, juror number 11 did not answer the prosecutor's question directly, but only indicated he understood that legal matters take time.

We find the prosecutor's explanation for the peremptory strike of juror number 11 is sufficiently supported by the record. Therefore, we hold that the trial court's finding that the prosecutor's peremptory strike of juror number 11 was not motivated by racial discrimination is not clearly erroneous.

■ The appellant also challenges the State's use of its peremptory strikes against two other minority veniremembers, Mr. W___ G___, juror number 14, and Ms. D___ T___, juror number 15. The prosecutor stated he struck them because in their responses to questions asked to the panel, and when questioned out of the presence of the other veniremembers, they expressed difficulty in being able to return a conviction in a circumstantial evidence case. The appellant contends this explanation is a pretext and is not supported by the record.

During the questioning of the venire panel, the following exchange occurred between the prosecutor and juror number 14 regarding a hypothetical circumstantial evidence case of a broken windshield:

Mr. Hileman: ... Mr. [W— G—], why do you disagree?

Juror: Soon as you came off the elevator you heard the broken glass and how can he be coming around the corner?

Mr. Hileman: That's a good point.

Juror: How can he be two places at one time?

Mr. Hileman: Can you find him guilty of breaking the windshield if nobody saw him?

Juror: Couldn't, no.

Mr. Hileman: What if he comes off the elevator?

Juror: No witnesses. You'd need a witness.

Mr. Hileman: What if he came off that elevator and heard your glass break. You start walking along towards your car and you see the guy that told you he was going to break your windshield running from your car and right past you. You didn't see him break the windshield.

Juror: You've got a suspect.

Mr. Hileman: In a fact situation like that could you find the person guilty of breaking your windshield?

Juror: No, you'd have to go through all technicalities. He could be mad and just going fast. You don't know if he broke it or not.

When questioned out of the presence of the other veniremembers, Mr. W— G— gave similar responses to the prosecutor:

Mr. Hileman: And you told me you couldn't find someone guilty on circumstantial evidence, you would have to have an eyewitness.

Juror: Right.

Mr. Hileman: So if my case involves circumstantial evidence there wouldn't be any chance of me getting a guilty verdict, would there?

Juror: Well, not necessarily. I mean, somebody had to break the window, okay.

I understand somebody—like I say, the pressure in the car could have broke [sic] the window. You see somebody with a bat and there was a half bat inside the windshield or whatever, was that piece belong to the other piece, could have been two bats, you know.

Mr. Hileman: You'd require me to have an eyewitness as you said earlier, right?

Juror: Yeah.

Counsel for appellant questioned juror number 14 on this same issue, and attempted to rehabilitate his responses to the State. In response to questions from appellant's counsel, juror number 14 later stated that he could make a fair decision without an eyewitness if the evidence was sufficient and he was convinced beyond a reasonable doubt. The State moved to strike Mr. W— G— for cause, but the trial court denied the motion.

During panel questioning on the same hypothetical circumstantial evidence case, Ms. D— T— responded as follows:

Mr. Hileman: Who else agrees with Mr. [W— G—], feels like to convict somebody of an offense I've got to have an eyewitness. Don't play that stuff about looks like it happened no matter how strong the circumstances are, got to have an eyewitness? Ms. [D— T—]?

Juror: No, I just feel like under those circumstances this person, they could have been late for work, they could have anything and human nature is going to make you think he did it just because they're running past you. But you can't—they'd have to be proven to me that this was the person that did it because I'm not going to pin something on somebody unless I'm a hundred percent sure that this is the person.

The State did not call Ms. D— T— for questioning outside the presence of the other veniremembers.

 It is a sufficiently race-neutral explanation for peremptorily striking a potential juror that the veniremember expressed reservations about relying on circumstantial evidence in returning a conviction. *Tompkins v. State,* 774 S.W.2d 195, 204–05 (Tex.Crim. App.1987). The State's explanations for

striking both juror number 14 and number 15 are race-neutral and are supported by their voir dire testimony in the record. Therefore, we find that the trial court's ruling was not clearly erroneous.

■ Appellant finally contends the State's explanation for striking Ms. E__ B__, juror number 21, is not supported by the record and is not sufficiently race-neutral to justify its peremptory strike. The prosecutor stated he used a peremptory strike to exclude juror number 21 from the jury because during his questioning of the venire panel she stated her brother was in jail after being falsely accused and that the system had failed him. Based on this experience with her brother, the prosecutor explained he felt she would be reluctant to find someone guilty. The prosecutor also stated juror number 21 indicated she had failed several lie detector tests even though she was telling the truth.[3] When questioned by the State in the presence of the entire panel, Ms. E__ B__ responded as follows:

Mr. Hileman: ... Anybody else third row? Yes, ma'am, Ms. [E__ B__].

Juror: Does this necessarily have to be in Harris County or is it just a situation—

Mr. Hileman: No.

Juror: Well, I do have a brother in jail and I think the system failed because his car was used in an action and he for some reason could not prove or he did not have anyone to witness where he was so he was held accountable and he's in jail for that along with the other people that were named. So I don't think that was just.

Mr. Hileman: Do you feel like that might affect the way you would look at this case?

Juror: I would not necessarily—oh, boy. Let me think of this one. I would probably—if it's a case like that I would probably have to make sure all of that is covered, you know, to make sure we find out whether the whereabouts have been proved with a reasonable doubt.

Mr. Hileman: Is it fair to say then that you're a little more skeptical?

Juror: For a little, yes.

Mr. Hileman: Is it fair to say me being the State, only act of that, a little bit behind because I'm going to have to prove to you things about where the defendant was and that sort of thing that aren't really part of the indictment?

Juror: I would really have to listen to the evidence and proof without a reasonable doubt that this person was guilty.

Mr. Hileman: So you're saying then—don't let me put words in your mouth, you're saying then that because of that you're less likely to be able to find someone guilty?

Juror: No.

Mr. Hileman: Could you find somebody guilty in an appropriate case?

Juror: Probably if it's not proven we would have to argue the case a little more.

When questioned by the State outside the presence of the other veniremembers, Ms. E__ B__ later stated she did not think her brother's experience would prevent her from being fair to the State's case.

The explanation given by the State for exercising a peremptory strike against juror 21 is race-neutral and supported by the testimony in the record. Although she indicated upon further questioning she thought she could be fair to the State, the prosecutor could have reasonably concluded her brother's experience would create a bias against returning a conviction. We find the trial court's determination that the prosecutor's peremptory strike of juror 21 was not motivated by racial discrimination is not clearly erroneous.

We note that despite the constitutional constraints placed upon the use of peremptory strikes by *Batson* and its progeny, a prosecuting attorney is still free to exercise them, provided they are used for race-neutral reasons. *Tompkins*, 774 S.W.2d at 205. The challenge, after all, is still a peremptory one.

---

3. It is unclear from the record what information the State used in determining that Ms. E__ B__ had taken *lie detector* tests. We note, however, that during questioning of the entire panel and immediately after the State questioned Ms. E__ B__, a Mr. A__ C__, juror number 35, did indicate he had taken a polygraph test after being falsely accused of a crime.

*Id.* We overrule appellant's sole point of error.

Finding no reversible error, we affirm the judgment of the trial court.