**AFFIRM; and Opinion Filed August 18, 2015.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-01079-CR**

**HENRY ANDRE WINZER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 14-00334-422-F**

## MEMORANDUM OPINION
Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Appellant Henry Andre Winzer was convicted by a jury of aggravated assault with a deadly weapon against a peace officer. In accordance with an agreement between appellant and the State as to punishment, the trial court sentenced appellant to five years in prison. On appeal, appellant argues that the trial court erred by denying his *Batson* challenge. Because the issues are settled, we issue this memorandum opinion. TEX. R. APP. P. 47.4. We affirm.

### BACKGROUND

The police responded to multiple reports that appellant's adult son was walking up and down the street behaving erratically and possibly waving a gun. When the police arrived near appellant's house, his son fired a gun at them. Police returned fire and hit his son. His son

retreated to the back yard and the police followed him. There they found appellant trying to help his son onto the porch. Both men resisted arrest and appellant bit one of the officers while they were struggling to arrest him. Appellant's son died at the scene from gunshot wounds.

This is an appeal from appellant's conviction for aggravated assault with a deadly weapon against a peace officer.

## ISSUE ON APPEAL

In his sole issue on appeal, appellant argues that the trial court erred when it denied his *Batson* challenge to the State's strikes of "all three potential black jurors." Appellant argues that the State's explanations for its strikes were a pretext for racial discrimination.

## Applicable Law and Standard of Review

The Texas Code of Criminal Procedure prohibits the use of peremptory challenges to exclude prospective jurors on the basis of race. TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006). Additionally, striking a prospective juror on the basis of race violates the equal protection guarantees of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 85 (1986).

Resolution of a *Batson* challenge raised by a defendant is a three-step process:

First, the defendant must make a *prima facie* case that a venire member was peremptorily excluded on the basis of race. Next, the prosecution must come forward with race-neutral reasons for the peremptory strike. Finally, the defendant has the opportunity to rebut the State's explanations. The burden of persuasion remains with the defendant to prove purposeful discrimination. In *Purkett v. Elem,* the United States Supreme Court explained that "unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Shuffield v. State,* 189 S.W.3d 782, 785 (Tex. Crim. App. 2006) (footnotes omitted); *see Blackman v. State*, 414 S.W.3d 757, 764–65 (Tex. Crim. App. 2013) (articulating three steps and noting opponent of strike has "burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of purposeful discrimination"). On appeal, we examine a trial court's conclusion that a racially neutral explanation is genuine, and not a pretext,

with great deference, and reverse only when that conclusion is, in view of the voir dire record as a whole, clearly erroneous. *Blackman*, 414 S.W.3d at 765.

## Analysis

Appellant's *Batson* challenge related to potential jurors Long, Mitchell, and Pickron.[1] After appellant's counsel stated his *Batson* challenge, the State explained the reasons for its strikes as follows:

> If you'll note that Long is a teacher. The State also struck Hacker, who is also a teacher. We struck Ms. Kennedy, who is also a teacher. Ms. Trosper was a teacher, but—well, she is a teacher, but she was stricken for cause. The rest of them, your Honor, were those who had issues with the police. That would include Ms. Pickron or Ms. Mitchell. I think [appellant also] struck Ms. Pickron. . . . So we struck all teachers, and we struck everyone who had law enforcement issues. And it just so happened that two were African American on the law enforcement side, and one was a teacher on the African American side.

In response, appellant's counsel (1) acknowledged that he also struck Pickron, (2) disputed that Mitchell said she had problems with law enforcement, and (3) argued that striking Long because she was a teacher is not a legitimate, race-neutral explanation.

> The prosecutor again explained that the State struck all teachers, regardless of race:

> Your Honor, just for record purposes, I want it to be noted Ms. Long, that's duly noted she was a teacher. We struck three white teachers as well. Teachers have long been an issue for the district attorney's office in Kaufman. They're more sympathetic, generally speaking. In this case in particular the State went into it knowing they did not want teachers or persons who were sympathetic because this is a very sympathy oriented case.

> With respect to Mitchell, the prosecutor explained that the State struck everyone who said they thought the system was unfair or who said they had a bad experience with the police, regardless of race, except for two jurors who had personal relationships with police officers:

> As relates to Ms. Mitchell, I believe that the defense is stating that she did not indicate that she thought that the system was unfair.

---

[1] Appellant argues that the strike of a third potential juror, Pickron, demonstrates the State's pattern of eliminating African-American jurors and not that the strike itself violated *Batson*.

Judge, I'd like the Court to know and the record to reflect that she was called up to the bench for that exact purpose. She stated that she felt like the system was unfair. Not only did we use a peremptory strike on her, but we also used one on Holloman [sic] who said that the system could not be fair, even though he came—approached, said that he felt like he could be fair. We also used one on Goble, who said she felt like the criminal justice system could not be fair. She came to the bench, said she felt like she could be fair; but we still struck her. I could continue with the entire list.

Every person that said that they had a bad experience with a police officer, we struck them, with the exception of two persons. And that would be Mr. Carr [sic], because when he came up he indicated not only could he be fair, but he had police officers that were currently his friends. Ms. Haney or Mr. Haney noted that same thing, that not only could he be fair, but that was 15 years prior, and that he had one of his best friends that was in his wedding was a peace officer. So the State felt comfortable with keeping those two persons.

Appellant's counsel did not question the prosecutor or introduce evidence to rebut the State's explanations but stated that, as a result of the State's strikes, there would be no African-American jurors. Appellant's counsel asked the trial court to "disallow the strike of 20 [Long] and 25 [Mitchell]."[2]

**Venire Member Long**

Appellant argues that the State's explanation that it struck Long because she was a teacher was pretextual. Appellant contends that the only communication with Long during voir dire was when she responded "yes" when asked if she could consider the full range of punishment. He argues that her answer to that question "belies the idea that she [was] somehow particularly sensitive." He contends that, under *Keeton v. State*, 749 S.W.2d 861, 868 (Tex. Crim. App. 1988), *Whitsey v. State*, 796 S.W.2d 707, 713–15 (Tex. Crim. App. 1989), and *Emerson v. State*, 851 S.W.2d 269, 273 (Tex. Crim. App. 1993), the State's race-neutral explanation—that she was a teacher and the State viewed teachers as more sympathetic and, as a

---

[2] Although appellant's counsel filed a motion to supplement the appellate record to include the juror information sheets and information on peremptory strikes, in oral argument, appellant's counsel stated that "the juror information cards in Kaufman [County] give us no information" and conceded that he did not think that there would be any information in the juror information sheets that would be helpful in the disposition of this case.

–4–

result, struck all teachers—was impermissible and pretextual because the group trait "was not shown to apply to Long specifically." Appellant argues that *Keeton*, *Whitsey*, and *Emerson* require the State to question venire member Long individually to determine whether the alleged group bias—the sympathetic nature of teachers—applied to her.

The State contends that its explanation for striking venire member Long was race neutral, and that appellant did not rebut the prosecutor's explanation that Long was struck along with all other teachers from the panel.[3] We agree.

The State's reason that it excluded all teachers from the venire panel is race neutral. *See Williams v. State*, 939 S.W.2d 703, 706 (Tex. App.—Eastland 1997, no pet.); *see also Rhoades v. State*, 934 S.W.2d 113, 124 (Tex. Crim. App. 1996) (race-neutral reasons included that prospective juror "was an elementary school teacher and might identify too closely with evidence of appellant's difficult childhood"). Appellant did not offer any evidence in rebuttal to the State's race-neutral reason for striking Long. Instead, appellant's only response was: "I don't think striking a juror because they're a teacher is a legitimate, race neutral explanation; and I would contend that that's a pretext for a strike for a juror based upon racial reasons."

The court of criminal appeals in *Grant v. State*, 325 S.W.3d 655, 659 (Tex. Crim. App. 2010), described *Keeton*, *Whitsey*, and *Emerson*, cases relied on by appellant, as cases issued shortly after *Batson* was decided that "suggested a number of factors that could be considered in the third step of a *Batson* challenge." But in reversing the court of appeals's decision and concluding the trial court did not clearly err in denying the *Batson* challenge, the *Grant* court stated that the court of appeals "should have given deference to the trial court's evaluation of the prosecutor's credibility and should not have given dispositive weight to the lack-of-questioning

---

[3] Given our disposition of appellant's issue, it is not necessary for us to address the State's argument that appellant did not present an adequate record to this Court.

factor." *Id.*at 661; *see Nieto v. State*, 365 S.W.3d 673, 678 (Tex. Crim. App. 2012); *Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992) (concluding that the prosecutor's stated reasons for strikes "are not rendered racially impermissible simply because he did not" individually "question[] all of the stricken venirepersons"); *Walker v. State*, 859 S.W.2d 566, 568 (Tex. App.—Waco 1993, pet. ref'd) (concluding prosecutor's non-discriminatory reasons for strike were not impermissible simply because he did not individually question the stricken venire members).

We conclude that the State's non-discriminatory reason did not become impermissible because the State did not individually question Long. And we also conclude that the trial court did not err in denying appellant's *Batson* challenge concerning Long. *See, e.g., Chamberlain v. State*, 998 S.W.2d 230, 236 (Tex. Crim. App. 1999); *Satterwhite v. State*, 858 S.W.2d 412, 424 (Tex. Crim. App. 1993) (holding appellant failed to carry his burden of showing racial discrimination because appellant did not cross-examine the prosecutor or offer any evidence to rebut prosecutor's race-neutral explanations); *see also Crew v. State*, No. 05-08-00959-CR, 2009 WL 2712386, at *4 (Tex. App.—Dallas Aug. 31, 2009, pet. ref'd) (mem. op., not designated for publication) ("Once the State provided its race-neutral explanation for the strike, appellant made no further argument against the explanation such as questioning the prosecutor or offering his own evidence of impermissible motive. Thus, on the record before us we cannot say the trial court's decision to overrule appellant's *Batson* challenge was clearly erroneous.") (internal citation omitted); *Daniels v. State*, No. 05-06-01363-CR, 2008 WL 444467, at *5 (Tex. App.—Dallas Feb. 20, 2008, pet. ref'd) (mem. op., not designated for publication) (concluding trial court's ruling denying *Batson* challenge was not clearly erroneous because, "[b]y failing to challenge any of the State's race-neutral reasons for striking the jurors, appellant did not meet his burden of showing the State's explanations were pretextual").

**Venire Member Mitchell**

During voir dire, Mitchell responded to the question of whether she felt "like the criminal justice system is unfair to minorities" with "Uh-ugh" and later stated "Yes" when asked if she thought that the system was unfair. Mitchell stated "[n]o" when asked if she or a friend had a bad experience with a police officer. When questioned individually, Mitchell confirmed that she thought "our system might not always be fair" but, in answer to the court, stated that she could "put that aside in this case" and be fair and impartial. She also stated that she saw instances of unfairness on television.

During the *Batson* hearing, the prosecutor stated that he struck Mitchell because she "had issues with the police" and she stated that the justice system was unfair. He said that the State struck all venire members who had law enforcement issues, with the exception of two jurors who had personal relationships with police officers. Defense counsel contended that he did not believe Mitchell "said she had any problems with law enforcement." He noted that, during the general voir dire, Mitchell stated the "system can be unfair at times" but then, in her individual questioning, she "made it perfectly clear" that "she was not saying the system is always unfair" but acknowledged that the system is not fair and correct in every case. Defense counsel said that the State was not accurately stating what Mitchell said and asked the court to disallow the State's strike of Mitchell.

On appeal, appellant argues that the State's reason, that Mitchell had "issues with the police" or "law enforcement issues[,]" is not supported by the record. And appellant argues that striking Mitchell because she stated that the legal system was unfair "cannot be said to be race neutral in light of the record" because her answers during individual questioning reflected that she did not believe that the system was unfair, or at least not any more unfair than the court acknowledged. And appellant contends that he "notified the trial court at the *Batson* hearing that

the State was misrepresenting Mitchell's testimony." The State argues that the record "amply supports" the prosecutor's concern that Mitchell had "law[ ]enforcement issues" and that defense counsel did not rebut the State's statement that the prosecutor struck every venire member "who expressed the same negativity about the justice system or police who was not adequately rehabilitated[.]"

The State's reason that it excluded Mitchell from the jury panel is race neutral. *See Pondexter v. State*, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996) (explanation that venire member believed criminal justice is fair "sometimes" was a race-neutral reason). As we noted, Mitchell stated during voir dire that she thought the justice system was unfair. Although Mitchell indicated during her individual questioning that she thought that she could be fair, the prosecutor could have reasonably concluded that her earlier statement that the system was unfair could result in a bias against returning a conviction. *See Spears v. State*, 902 S.W.2d 512, 517–19, 522 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (concluding that trial court did not clearly err in determining prosecutor's strikes were not racially motivated when prosecutor could reasonably conclude that a venire member "had indicated an unwillingness to convict and had then changed her answer" during individual questioning and that another venire member would be reluctant to find someone guilty "[a]lthough she indicated upon further questioning she thought she could be fair to the State"); *Green v. State*, 839 S.W.2d 935, 939 (Tex. App.—Waco 1992, pet. ref'd); *see also Vargas v. State*, No. 05-96-01589-CR, 1999 WL 436848, at *5 (Tex. App.—Dallas June 30, 1999, pet. ref'd) (not designated for publication) ("That [venire member] eventually stated she would not let her feelings interfere with her verdict does not mean the State has to accept her wavering answers.").

Appellant also argues that the State did not strike two additional white jurors—Carr and Lowe—who testified that they had negative personal encounters with law enforcement.[4] In response, the State contends that jurors Carr and Lowe were not similarly situated to Mitchell because they "had objectively more benign interactions with police which they adequately explained" and neither stated "that they believed the system is unfair in general."

Disparate treatment is a factor we consider to determine whether the State's facially race-neutral explanation is a pretext for discrimination. *See Johnson v. State*, 959 S.W.2d 284, 292 (Tex. App.—Dallas 1997, pet. ref'd). In this case, appellant contends that the State struck minority prospective jurors who gave answers similar to nonminority prospective jurors the State did not strike. "We cannot, however, automatically impute disparate treatment in every case in which a reason for striking a minority venireperson also technically applies to a non-minority venireperson whom the prosecutor found acceptable." *Leadon v. State*, 332 S.W.3d 600, 612 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992). It "is unlikely that two venirepersons on one panel will possess the same objectionable attribute or character trait in precisely the same degree." *Cantu*, 842 S.W.2d at 689. Such differences may properly cause the State to challenge one potential juror and not another. *Id.*; *Leadon*, 332 S.W.3d at 612.

During voir dire, Carr indicated that she or a family member had been mistreated by a peace officer, but she stated to defense counsel that the experience would not affect how she viewed the case and that she could be fair. When questioned individually, Carr stated that the negative experience involved a police raid of a relative's home in connection with her nephew's drug conviction. Carr confirmed that she would be able to listen to and consider evidence from

---

[4] Appellant refers to the State's claimed "improper closing arguments related to race" to demonstrate "even more clear[ly]" that the State's justifications for the challenged strikes were not race neutral. But *Blackman*, 414 S.W.3d at 765, refers to review of the entire voir dire record, not to closing arguments, on review of a *Batson* challenge.

police "'cause [her] son was a sheriff's deputy." Defense counsel asked her, "So you have no problem with the police?" And she answered, "No, sir." When Lowe was asked if she had a bad experience with police, she answered, "I'll call it a maybe. I mean I wasn't happy." When asked individually if she had a bad police experience, she responded, "Not really[,]" and explained that two female police officers responding to a disturbance call had been "really rude" to her. She stated that it would not affect the way she feels about police and that she had "no disrespect for law enforcement whatsoever."

We conclude that the trial court did not err in denying appellant's *Batson* challenge concerning Mitchell.

**Venire Member Pickron**

Both the prosecution and defense struck venire member Pickron. During oral argument, appellant stated he did not "suggest" the double strike of Pickron "as a ground to reverse" but contended that he pointed out the strike of Pickron as "the pattern to show the purposeful discrimination, the purposeful intent to remove all of the black jurors." He stated that "it is the other two"—Long and Mitchell—that appellant believed "are the basis of the reversal."

Based on our conclusion that the trial court's ruling denying appellant's *Batson* challenge concerning Long and Mitchell was not clearly erroneous and the fact that both sides struck Pickron and that appellant conceded that the strike of Pickron is not a ground to reverse, we conclude that the State's strike of Pickron was harmless and does not apply to a *Batson* claim. *See, e.g., Robinson v. State*, No. 01-89-00589-CR, 1990 WL 177270, at *3 (Tex. App.—Houston [1st Dist.] Nov. 15, 1990, pet. ref'd) (not designated for publication) ("Appellant's use of his own peremptory challenge to strike the same venireperson renders the State's use of a peremptory challenge harmless and inapplicable to a Batson claim.").

We conclude that the trial court's ruling denying appellant's *Batson* challenge was not clearly erroneous. We resolve appellant's sole issue against him.

**CONCLUSION**

We affirm the trial court's judgment.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

141079F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HENRY ANDRE WINZER, Appellant

No. 05-14-01079-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 422nd Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 14-00334-422-F.
Opinion delivered by Justice Lang-Miers, Justices Francis and Whitehill participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 18th day of August, 2015.