Orling GOODE, as Independent Executor of the Estate of James Emerson Goode, Appellant,

v.

Mohammad F. SHOUKFEH, M.D., Appellee.

No. 07–95–0018–CV.

Court of Appeals of Texas, Amarillo.

Feb. 13, 1996.

Rehearing Overruled March 4, 1996.

Morgan & Weisbrod, Dallas, Les Weisbrod, Bruce Pauley, Michael S. Box, William A. Newman, Law Offices of Mary Alice McLarty, Mary Alice McLarty, Lubbock, for appellant.

McCleskey, Harriger, Brazill & Graf, L.L.P., Jim Hund, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

Orlin Goode, as Independent Executor of the Estate of James Emerson Goode (Goode) sued Mohammad F. Shoukfeh, M.D. (Shoukfeh) for medical malpractice and appeals from an adverse judgment. Goode attempts to secure reversal by attacking purported error concerning jury selection. His first three points involve allegations of discriminatorily used peremptive strikes. His next three concern the trial court's refusal to strike various jurors for cause. The last encompasses the trial court's refusal to grant a new trial due to "jury selection error." We affirm.

## Point of Error One

Goode initially contends that the trial court erred in denying his *Edmonson*[1] challenge to four peremptory strikes made by Shoukfeh. Those strikes, allegedly, were undertaken as a means of excluding three African–Americans and one Hispanic from the jury venire simply because of their race or ethnicity. We disagree and overrule the point.

### 1. Standard of Review

In 1991, the United States Supreme Court ruled that litigants in a civil proceeding may not exclude potential members from a jury merely because of their race. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616, 111 S.Ct. 2077, 2080, 114 L.Ed.2d 660, 670 (1991). To do so, violates the excluded individual's right to equal protection. *Id.* The Texas Supreme Court agreed, and held, in *Powers v. Palacios*, 813 S.W.2d 489 (Tex.1991), that

1. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

the use of race as "a factor" in removing a potential juror denies that person equal protection. *Id.* at 491.

Admittedly just, the constitutional rule is not without its predicament. That encountered here involves the procedure by which a violation is shown. Though the topic has long been the subject of judicial discourse in the criminal realm, neither of the aforementioned supreme courts expounded upon the procedures utilized in a civil proceeding. Indeed, this dearth of guidance spawned at least one jurist to wish that "some of these appellate [j]udges, especially the Federal appellate judges that turn in all this [stuff], would have to come down here and put up with it." Nevertheless, in addressing the claim at bar, we encountered a growing number of recent opinions, both civil and criminal, which provide guidance through the morass. The rules garnered, follow.

■ First, an *Edmonson* claim requires the trial court to determine whether the litigant intentionally discriminated against a prospective juror. *Hernandez v. New York,* 500 U.S. 352, 359–60, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991); *see Chambers v. State,* 866 S.W.2d 9, 23 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994) (noting that the defendant has the burden to prove purposeful discrimination); *Dewberry v. State,* 776 S.W.2d 589, 591 n. 2 (Tex.Crim.App.1989) (recognizing that despite the rhetoric concerning the establishment of a "prima facie case," the ultimate question is whether the litigant intentionally discriminated). Second, that inquiry is inherently factual. *Salinas v. State,* 888 S.W.2d 93, 98 (Tex.App.—Corpus Christi 1994, pet. ref'd); *accord, Vargas v. State,* 838 S.W.2d 552, 554 (Tex.Crim.App. 1992) (discussing the inherently factual nature of such inquiries). Third, to flesh-out the requisite facts, the court conducts an adversarial, evidentiary hearing. *Lott v. City of Fort Worth,* 840 S.W.2d 146, 149 (Tex.App.—Fort Worth 1992, no writ); *Shields v. State,* 820 S.W.2d 831, 832 (Tex. App.—Waco 1991, no pet.). Fourth, the procedural and evidentiary rules normally applicable to general civil matters apply with equal force to this hearing. *Id.*

■ Fifth, appellate review of the court's factual determinations is not *de novo. Vargas v. State,* 838 S.W.2d at 554. Quite the contrary, they are entitled to the deference generally accorded factual findings, *see Salinas v. State,* 888 S.W.2d at 98 (holding that the finding is subject to review under deferential standard), and may be rejected only if clearly wrong. *Vargas v. State,* 838 S.W.2d at 554 (adopting the "clear error" standard of review for discrimination claims arising in the criminal setting); *Hernandez v. New York,* 500 U.S. at 366–70, 111 S.Ct. at 1869–72, 114 L.Ed.2d at 410–12 (also discussing the deference to be accorded).[2] To this end, we construe the record in a manner favoring the decision and forego the invitation to reweigh the evidence or resolve credibility disputes. *Vargas v. State,* 838 S.W.2d at 553–54. Furthermore, should the evidence be of sufficient quantum so as to render the court's decision plausible or to dispel a firm and definite conviction that a mistake occurred, then we must stay our hand. *Doby v. State,* 910 S.W.2d 79, 80–81 (Tex.App.—Corpus Christi 1995, no pet. h.).

■ In effect, the standard of review frees us from having to undertake the tortious procedural route journeyed by trial courts. *Dewberry v. State,* 776 S.W.2d at 591 n. 2. Unlike them, we do not travel through the land of shifting burdens.[3] *Id.; Spears v.*

---

2. This standard appears similar, though not necessarily identical, to that utilized in resolving claims of factual insufficiency, wherein we decide whether the finding is *clearly wrong and manifestly unjust. Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

3. In this land, reminiscent of that journeyed by practitioners in the field of employment discrimination, the claimant first establishes a prima facie case of discrimination which triggers his opponent's burden to come forward with race neutral explanations for his acts, which, in turn, triggers the claimant's burden to discredit those explanations. *Dewberry v. State,* 776 S.W.2d 589, 591 n. 2 (Tex.Crim.App.1989); *accord Purkett v. Elem,* 514 U.S. ——, ——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 838–39 (1995) (describing the shifting burdens); *Harris v. State,* 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992), *quoting, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

*State*, 902 S.W.2d 512, 515 (Tex.App.—Houston [1st Dist.] 1994, no pet.) (noting that the preliminary issue of whether the claimant established a prima facie case becomes moot when his opponent "articulates his reasons for the challenged peremptory strikes"). Instead, our duty is to simply decide whether the record evidence supports the trial court's ruling. *Dewberry v. State*, 776 S.W.2d at 591 n. 2 (stating that the question of whether one has established a prima facie case is normally not the concern of the appellate court).[4]

## 2. Application of Facts to Standard of Review

### a. Pertinent Facts

The statement of facts revealed that after voir dire of the prospective jury panel, Shoukfeh peremptorily challenged six of its members. Goode objected to four of the challenges, claiming them to be racially motivated. In support of the allegation, his counsel argued that

... The defendants have stricken juror number 7, who is an African American. They have stricken juror number 26 who was also an African American, and juror number 28 likewise is [sic] African American. And we believe that there are no valid reasons for striking any of the three. In addition, they struck number 9 who is of Hispanic descent and, likewise, we believe, for no sufficient reason.

There are no African American juror members left on this particular panel and as will [sic] see from—it is our opinion that that was done for racially impermissible reasons. And *if necessary, I would be glad to put on some evidence to that effect.*

(Emphasis added). As to the last comment, the court responded, "[n]o, I am going to let Jim [Hund] answer."

Hund, counsel for Shoukfeh then rose "to put on the record our reasons for striking the four jurors in question." Juror seven was removed because she knew an individual who was "either a sibling of Orlin [Goode] or Mr. Goode's widow ... [and] they had worked together ... at Highland Medical Center." Juror nine was removed because she was "a single mother who does not hold a job, who has four children, and who was also not married ... [a]nd we were concerned about basically the trial of this case and how that would affect her ability to take care of four children." Other reasons proffered against her included her age, 30, that people "not holding down a job ... I think traditionally ... did not make good defense jurors," that she appeared to be a welfare recipient, and that "she would be more motivated to be more of a plaintiff's juror."

As to juror number 26, counsel stated that she "had left Methodist Hospital as a nurse and we were concerned, basically of the circumstances of the reasons that she left employ there." He then closed with juror 28, who was allegedly removed due to her "unequivocal statement [to opposing counsel] ... that she had a problem sitting in judgment" and misstatement as to prior jury service.

Once Hund finished, Goode's counsel began his rebuttal and asked for "opportunity ... to see the notes that were made by ... [defense counsel] to see if there [were] any references to race ... and I believe that they should be admitted into evidence at this time." Thereafter, Goode stated that he would "like to call a witness" and eventually called Hund and Bill Moss, Shoukfeh's other attorney. The questions propounded to each were virtually the same. They involved solely their respective notes developed during voir dire. Additionally, when asked whether they reflected the use of race as basis to strike the four panel members, Hund invoked the work-product privilege and Moss answered "no." Both witnesses, however, refused to disclose them to Goode, again claiming work-product. The trial court sustained their claim of privilege and refused to sequester the documents for *in camera* review.

No other topics were explored while Goode had the two attorneys on the stand. Nor did he proffer any other testimony or documents

4. Of course, this presupposes that the trial court granted the claimant opportunity to create a prima facie case and discredit the reasons proffered by the opposition. Should either be denied, then we may have to look to the ritualistic procedure of shifting burdens. *Dewberry v. State*, 776 S.W.2d 589, 591 n. 2 (Tex.Crim.App.1989).

for consideration, despite no apparent obstacle preventing him from doing so.

### b. Outside the Record

■ We initially note that rather than present evidence, Goode's attorney merely stood and offered unsworn personal observations and conclusions about the venire's racial composition. At no time did he ask the court to judicially notice, or opposing counsel to stipulate to, anything about the venire or its particular members. Nor did he even attempt to offer the juror information cards into evidence.[5] Normally, this omission would be fatal on appeal. Again, in reviewing the trial court's decision, we may only consider evidence of record, *Vargas v. State,* 838 S.W.2d at 556–57, and unsworn comments by an attorney are not evidence. *Shields v. State,* 820 S.W.2d at 833 (also holding that simply including juror information cards in a transcript does not make them evidence of record); *Prosper v. State,* 788 S.W.2d 625, 627 n. 1 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). As so aptly put by the court in *Shields,*

> [u]nless reflected by the *evidence,* an appellate court does not judicially 'know' where jurors were seated on the venire, which jurors were peremptorily struck by the parties, jurors' ethnicity, ages, occupa-

tions, styles of dress, religious preferences, or a myriad of other factors which may support or negate a charge that the [opponent] has used its peremptory challenges in a racially discriminatory manner. The most elaborately constructed, fact-based argument on appeal is for naught unless it is supported by *evidence* in the record. *Id.* at 834 (emphasis in original).

■ Nevertheless, Shoukfeh does not raise the omission on appeal. Instead, he expressly opted not to dispute that Goode established a prima facie case. Whether this is tantamount to a stipulation and, if so, whether it allows us to consider matter outside the record are questions which we do not decide, given the substantive resolution of the point.[6]

### c. Result If Evidence Outside Record is Considered

■ Assuming *arguendo* that the comments of Goode's attorney, the contents of the statement of facts, and the items included within the original and supplemental transcripts are evidence, we must conclude that the trial judge acted properly. First, it may well be that Shoukfeh struck three blacks and one hispanic from the venire. Yet, race-neutral explanations were proffered to support his action.[7] For instance, removing a

---

5. We note that the information cards themselves fail to mention the race or ethnicity of the individual completing them. Thus, even if tendered as an exhibit, they would not have been sufficient to illustrate the jury's racial or ethnic composition.

6. Long ago, the Texas Supreme Court stated that the "appellate jurisdiction of the court of ... appeals is directed to the correction of errors committed in the courts [below] ... and connected with the rendition of the judgment." *Ennis Mercantile Co. v. Wathen,* 93 Tex. 622, 57 S.W. 946, 947 (1900). For this reason, "they are confined to the record as it is made by the trial court." *Id.* Furthermore, only the trial judge has the "authority" to change the contents of its record. *Gerneth v. Galbraith–Foxworth Lumber Co.,* 117 Tex. 205, 300 S.W. 17, 20 (1927). An appellate court cannot correct the record by hearing testimony or inquiring into extraneous acts. *Ennis Mercantile Co. v. Wathen,* 57 S.W. at 947. Additionally, that rule induced this very court, in *Scruggs v. McCart,* 16 S.W.2d 973 (Tex. Civ.App.—Amarillo 1929), *rev'd on other grounds,* 26 S.W.2d 173 (Tex.Comm'n App.1930), to forego consideration of documents tendered outside

of the appellate record, despite both parties having stipulated that the court could peruse them. *Id.* at 975–76.

7. According to the United States Supreme Court, the reasons articulated need not be plausible or even sensical, just race-neutral. *Purkett v. Elem,* 514 U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839–40 (1995) (wherein the juror was excluded because of his long, unkempt hair, mustache and beard). This ruling *implicitly* re-confirms the historical nature of peremptory challenges. The latter were nothing more than a *fait accompli* initiated by the litigants. *See Tompkins v. State,* 774 S.W.2d 195 (Tex.Crim. App.1987) (stating that " '[t]he challenge, after all, is still a peremptory one' "). They entitled either party to remove whom they cared for any reasons at all. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69, 82–83 (1986). Though *Batson,* and its progeny, may have diminished the right somewhat, none vitiated it. Quite the contrary, save for a few grounds implicating invidious discrimination, litigants may still remove whomever they choose and for whatever reason they choose. That the reasons

juror because of his age, employment and marital status does not implicate race. *Doby v. State,* 910 S.W.2d 79, 82 (Tex.App.—Corpus Christi 1995, no pet. h.); *accord McGee v. State,* 909 S.W.2d 516, 520–21 (Tex.App.—Tyler 1995, pet. ref'd) (wherein a juror was legitimately struck for being an unemployed, unwed mother). Nor is concern for a juror's child racially discriminatory. *See e.g., Williams v. State,* 804 S.W.2d 95, 99 (Tex.Crim.App.), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991) (wherein the prosecutor voiced concern about the juror's three minor children as a basis for striking the juror). Similarly, removing one because of his presence on the welfare rolls touches not upon race but economics. So too is counsel's hunch or surmise that individuals with a particular economic background may favor plaintiffs facially race-neutral; indeed, neither *Edmonson* nor *Powers* deny litigants the authority to act pursuant to such subjective speculations. *See Spears v. State,* 902 S.W.2d at 518 (stating that litigants may still exercise their strike based on a personal "hunch" free of racial animus). Thus, none of the reasons Shoukfeh gave for excluding juror nine are facially impermissible.

 Litigants may also exclude, without fear of denying him equal protection, a juror who knows a party to the litigation or relative of a party, *DeBlanc v. State,* 799 S.W.2d 701, 711–13 (Tex.Crim.App.1990), *cert. denied,* 498 U.S. 1301, 501 U.S. 1259, 111 S.Ct. 902, 2912, 112 L.Ed.2d 1026, 115 L.Ed.2d 1075 (1991) (knew defendant's mother), who hesitates to pass judgment on others, *Spears v. State, supra* (wherein the prosecutor believed that the juror would be reluctant to convict another), who misstates information on his jury information card, or who left the employ of an entity associated with a party. None of these excuses facially entangle race or ethnicity. So, none, in and of themselves, imply, much less prove, that race was a factor in Shoukfeh's challenging jurors seven, twenty-six, and twenty-eight.

Second, Goode may also be correct in arguing that Shoukfeh permitted an anglo to remain on the jury though he had the same characteristics underlying the removal of a minority. Yet, the converse is also true. The doctor struck an anglo, Lawrence Washington, for the same reason he challenged Pamela Walker, that is, their possible acquaintance with the Goodes.

Third, of the six panel members actually struck, two were anglo. Moreover, and contrary to Goode's statement otherwise, this did not purge the venire of all racial or ethnic minorities. At least two individuals remained who had names of Latin or Hispanic derivation, that is, *Teresita Ano* Barlow and Ephraim Thomas *Rosa.*[8] Had Shoukfeh intended to exclude all minorities, as Goode so contends, one could rationally wonder why he did not challenge Teresita Barlow and Ephraim Rosa instead of the two anglos. This too provides logical basis to question Goode's allegations of purposeful discrimination.

Fourth, implicit within the reasons given by Hund for challenging the four minorities lies his representation that race was not a factor. Though Goode had the chance to test this through direct examination, he did not. Instead, he merely set-about obtaining his opponents' notes.

Indeed, much of what appears under point one of his appellant's brief was never proposed to the trial court. For instance, perusal of the statement of facts discloses no comparison between the characteristics of the challenged and unchallenged jurors. Quite the contrary, his argument consisted simply of uttering conclusions and demanding notes.

When viewed *in toto,* the record depicts *de minimis* effort to prove discrimination, innuendo arising from legal fiction, and rebuttal comprised of race-neutral explanation.[9] In other words, the trial court faced a mishmash of evidence, innuendo, credibility and

---

are laughable, illogical or simply distasteful does not make them discriminatory or impermissible.

**8.** We acknowledge that relying on one's name to determine ethnicity itself poses concern. Names are often more a choice than a description.

**9.** The legal fiction involved is that which transforms, through the trick of law, the mere challenge against members of a cognizable minority into prima facie evidence of purposeful discrimination.

conflict which it alone could balance. *Tompkins v. State*, 774 S.W.2d at 203 (noting that the trial court has the responsibility to weigh the evidence and assess the credibility of the witnesses); *see Purkett v. Elem*, 514 U.S. at —, 115 S.Ct. at 1772, 131 L.Ed.2d at 840 (recognizing that a finding of racial motive or lack thereof "primarily" turns "on an assessment of credibility"). Given the situation and our standard of review, we are not left with a definite or firm conviction that a mistake occurred. Sufficient evidence exists to make the trial court's implicit finding of no discrimination plausible. Thus, we overrule point one.

### Points of Error Two and Three

The next two points concern the trial court's refusal to inspect, or impound for *in camera* review, the personal notes written by opposing trial counsel during jury voir dire. Goode represents that he "asked *only* that the court 'impound [defense counsel's] notes and seal them in an envelope....'" (Emphasis added). He further denies any desire to personally view the items. Instead, he merely wanted the trial judge to look at the documents prior to ruling on his *Edmonson* claim. Yet, the record belies Goode's current representations. Rather than limit inspection to the court, his trial counsel wanted "*the opportunity ... to see the notes ...* to see if there are any references to race in any of these notes." (Emphasis added). Attorney Moss was also asked whether he would mind such a personal inspection. It was at that point that Moss asserted the work-product privilege, attorney Hund already having done so. The trial court sustained their claims of privilege.

▆▆▆▆ The notes of counsel made during juror voir dire are attorney work-product. *Guilder v. State*, 794 S.W.2d 765, 767 (Tex.App.—Dallas 1990, no pet.).[10] Further-

more, the privilege insulates them from disclosure unless found to be within an exception expressed in Rule 503(d) of the Texas Rules of Civil Evidence. *Tex.R.Civ.P.* 166b(3)(a). Yet, Goode never attempted, below or here, to show what, if any, exception listed in Evidence Rule 503(d) vitiated the protection afforded the note.[11]

Additionally, and assuming that the notes were discoverable, Goode nowhere argues how the court's refusal to order their disclosure or otherwise consider them amounted to prejudice. That being part of his appellate burden, *Tex.R.App.P.* 81(b)(1), we have no choice but to overrule these points as well.

### Points of Error Four, Five and Six

The next three points question the trial court's refusal to strike prospective jurors Bockman and Thomas. The two were purportedly biased "concerning the subject matter of the lawsuit or had preconceived ideas about the level of proof" needed. Since, neither could be rehabilitated, Goode concludes, the court should have removed them for cause. We again disagree and overrule the points.

▆▆▆▆ With regard to Bockman, we note that Goode failed to renew his challenge immediately prior to making his peremptory strikes. This resulted in his waiving any claim of error. *Beavers v. Northrop Worldwide Aircraft Serv., Inc.*, 821 S.W.2d 669, 681 (Tex.App.—Amarillo 1992, writ denied).

▆▆▆▆ With regard to Thomas, Goode does not claim, or attempt to show, harm. Again, without such a showing, there is nothing we can do. *Id.* (noting that reversal is conditioned on proof of harm); *accord Galvan v. Aetna Cas. & Sur. Co.*, 831 S.W.2d 39, 40 (Tex.App.—El Paso 1992, writ denied) (refusing to reverse due to the lack of harm); *Tex.R.App.P.* 81(b)(1).

---

10. The cases relied upon by Goode to support his belief that the notes should have been admitted as evidence, *Garcia v. State*, 802 S.W.2d 817 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd); *Lott v. City of Fort Worth*, 840 S.W.2d 146 (Tex. App.—Fort Worth 1992, no writ) and *Jones v. State*, 818 S.W.2d 532 (Tex.App.—Houston [1st Dist.] 1991, no pet.) are inapposite. None involved a claim of work-product.

11. This assumes that a claim of discrimination, such as that at bar, displaces the work-product privilege. One case has held that it does not. *E.g., Guilder v. State*, 794 S.W.2d 765, 767 (Tex. App.—Dallas 1990, no pet.) (holding that *Batson* does not create an exception to the work product privilege).

### Point of Error Seven

The final point of error involves the trial court's decision to refuse new trial. Though undeveloped in his brief, which is alone basis to overrule it, *Lewis v. Deaf Smith Elec. Coop., Inc.*, 768 S.W.2d 511, 512–13 (Tex.App.—Amarillo 1989, no writ), the allegation is predicated solely upon "jury selection error." Our having found no reversible error, we overrule point seven as well.

Accordingly, we affirm the judgment.