NO. 07-01-0200-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 7, 2003


______________________________



IN THE MATTER OF THE MARRIAGE OF


ALTA MAE SCOTT AND JOHN THOMAS SCOTT


_________________________________



FROM THE 316TH DISTRICT COURT OF HUTCHINSON COUNTY;



NO. 33,458; HON. JOHN LAGRONE, PRESIDING


_______________________________



Before JOHNSON, C.J., QUINN, J., and BOYD, S.J. (1)

OPINION


 John Thomas Scott (John) appeals from a final divorce decree which ended his 53
year marriage to Alta Mae Scott (Alta) and divided the community property. The four
issues before us fall within two general categories. The first involves the legal and factual
sufficiency of the evidence underlying the trial court's decision to grant the divorce and
divide the marital estate. The second concerns the ability of the trial court to award title
to realty to one who is not a party to the action. We affirm in part and reverse and remand
in part. 

Issue One -- Sufficiency of the Evidence Underlying the Grounds for Divorce


 John initially contends that the evidence underlying the trial court's decision to grant
the divorce was both legally and factually insufficient. We disagree.

 Alta petitioned for divorce on the grounds that the marriage had become
insupportable due to discord or conflict of personalities that destroys the legitimate ends
of the marital relationship and prevents any reasonable expectation of reconciliation. See
Tex. Fam. Code Ann. §6.001 (Vernon 1998). Though she did not personally testify at trial,
the record nonetheless contains evidence indicating that 1) the Scotts had not slept in the
same bedroom for approximately 22 years or lived under the same roof for one and one-half years prior to the final hearing, 2) Alta had changed her lifestyle, 3) Alta had attempted
to run John off of the road with a vehicle, 4) John believed Alta was undermining his
business, and 5) John wanted to "get rid of this deal." This is more than ample evidence
upon which the trial court could have determined that the marital relationship has been
impeded, that discord and conflict of personalities existed, and that the marital relationship
had ended without reasonable expectation of reconciliation. See Baxla v. Baxla, 522
S.W.2d 736, 739 (Tex. Civ. App.-Dallas 1975, no writ) (holding evidence that indicated
one spouse threatened to kill the other and attempts at reconciliation went for naught
evinced that the marital relationship had become insupportable). 

 As stated in precedent, whether the evidence is sufficient to establish
insupportability is left to the discretion of the trial court when the divorce is tried by the
court. Id. at 738-39; Cusack v. Cusack, 491 S.W.2d 714, 720 (Tex. Civ. App.-Corpus
Christi 1973, writ dism'd w.o.j.). We conclude that the trial court did not abuse its
discretion when it held that the marital relationship between the Scotts had become
insupportable.

Issue Two -- Award to J & J Panhandle Construction, Inc.


 Next, John asserts that the trial court erred when it awarded title to several parcels
of realty to J & J Panhandle Construction, Inc. (J & J) even though J & J was not a party
to the divorce proceeding. We overrule the point.

 The property in question (various tracts totaling 40 acres) was transferred by an
entity known as Riata to John and Alta. At the time of the transfer, Riata owed J & J for
work that J & J had performed for it. And, to satisfy the outstanding debt due J & J, Riata
transferred the realty to Alta and John, the latter being a director and the president of the
corporation. Thereafter, John's son, James, intervened in the divorce proceeding. He did
so alleging that he, like his father, was a shareholder of J & J and that John had "engaged
in fraudulent or dishonest conduct . . . in that he breached his fiduciary duty to the
Corporation by using corporate funds to acquire property in his personal name" and that
"he has failed to reveal to other directors and officers pertinent facts adverse to corporate
interests . . . ." Thereafter, he prayed for damages, the removal of John as a director of
J & J, interest, costs, attorney's fees, and "such other relief which the Intervenor may be
entitled." Though John answered the petition, he did so by general denial. No special
exceptions were included in the pleading.

 James' petition can be reasonably interpreted as being in the nature of a
shareholder's derivative suit. That is, he, as a shareholder of J & J, initiated suit on behalf
of the corporation to recover upon claims of the corporation against its president. And,
though the petition may have omitted various pleading requirements mandated by statute,
see Edlund v. Bounds, 842 S.W.2d 719, 728-29 (Tex. App.-Dallas 1992, no writ) (holding
that the shareholder must allege in his pleading that he made demand upon the corporate
officers to prosecute the action and they refused or explain why no such demand was
made), no one specially excepted to their absence. Thus, they were waived.

 Similarly waived was any complaint about James failing to join J & J as a party to
the suit. While the corporation was a necessary or indispensable party to the proceeding,
see DeBoard v. Cicle Y Of Yoakum, Inc., 951 S.W.2d 127, 134 (Tex. App.-Corpus Christi
1997), rev'd on other grounds, 967 S.W.2d 352 (Tex. 1998) (holding it an indispensable
party to a shareholders derivative suit); Providential Inv. Corp v. Dibrell, 320 S.W.2d 415,
418 (Tex. Civ. App.-Houston 1959, no writ) (holding it a necessary party to such a suit),
no one objected to its absence below. Thus, the defect was waived. See Puryear v. Red
River Authority, 383 S.W.2d 818, 821 (Tex. Civ. App.-Amarillo 1964, writ ref'd n.r.e.)
(holding that in the absence of a plea of non-joinder of necessary parties, the appellate
court was not authorized to reverse the trial court's judgment because of the lack of a
necessary party); Cox v. Johnson, 638 S.W.2d 867, 68 (Tex. 1982) (holding that the failure
to join an indispensable party generally is not fundamental error because seldom will the
absence of an indispensable party deprive the trial court of jurisdiction to adjudicate
between the parties already joined).

 Finally, a reading of the record discloses ample evidence upon which the factfinder
could have reasonably decided that the realty actually belonged to J & J. Again, Riata
owed the corporation a debt. Thus, the receivable belonged to J & J, not John, its
president and a shareholder. Moreover, the conveyance occurred in satisfaction of the
debt owed to J & J, according to John's own testimony. It is well settled that when one
party pays the purchase price of realty (that price being satisfaction of the debt due J & J
at bar) but title is placed in the name of another, a purchase money resulting trust will arise
in favor of the entity providing the purchase money. Nolana Dev. Ass'n v. Corsi, 682
S.W.2d 246, 250 (Tex. 1984). There existing evidence illustrating that such a trust arose
here, the trial court did not err in vesting J & J with title to the land. 

Issue Three -- Sale of Horses Below Fair Market Value


 Next, John attacks the legal and factual sufficiency of the evidence underlying the
trial court's finding number VIII. In the latter, the trial court stated that on

 December 7, 1999, [it] ordered the eleven horses belonging to the parties to
be sold and the proceeds paid into the registry of the Court. John . . .,
without consulting [Alta], sold the horses at a private sale for $3,100, an
amount below their fair market value, with intent to reacquire said horses
after the divorce was final. 


However, John neither argues nor attempts to illustrate the effect, if any, that the court's
finding had upon the judgment ultimately rendered. This is of import since the burden lay
with him to establish on appeal that the purported error caused the rendition of an
improper judgment. In re M.S., No. 02-0509, 2003 WL 21512654 (Tex. July 3, 2003);
Crescendo Inv., Inc. v. Brice, 61 S.W.3d 465, 477 (Tex. App.-San Antonio 2001, pet.
denied). Consequently, we may not reverse the judgment of the trial court (assuming that
the error of which he complains was indeed error). See Tex. R. App. P. 44.1(a) (stating
that no judgment may be reversed on appeal on the ground that the trial court made an
error of law unless the court of appeals concludes that the error complained of probably
caused the rendition of an improper judgment or probably prevented the appellant from
properly presenting the case to the court of appeals); Goode v. Shoukfeh, 915 S.W.2d
666, 673 (Tex. App.-Amarillo 1996), affirmed, 943 S.W.2d 441 (Tex. 1997) (overruling the
point of error since the appellant did not claim or attempt to show that he was harmed by
the purported error). 

Issue Four - Valuation and Division of Property


 Through his last issue, John attacks the trial court's distribution of the marital estate. 
He does so by first contending that the trial court erred in valuing two separate tracts of
land. Then, he questions the sufficiency of the evidence underlying the trial court's finding
that the personalty awarded to each litigant was substantially equal. We sustain the issue.

 Statute obligates the trial court to divide the marital estate, upon the divorce of the
parties, "in a manner that the court deems just and right, having due regard for the rights
of each party and any children of the marriage." Tex. Fam. Code Ann. §7.001 (Vernon
1998). This provision does not obligate the court to divide the property equally. Tate v.
Tate, 55 S.W.3d 1, 10 (Tex. App.-El Paso 2000, no pet.). Indeed, it has long been held
that trial courts have great discretion in determining how to divide the estate, and we
cannot interfere with that decision unless and until it is shown that its discretion was
abused. Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). With this said, we turn to the
contentions before us. 

 As to the valuation of the two tracts of land, the first parcel consists of five acres
located in Hutchinson County. On it sits a three bedroom 1700 square foot house in
average condition, a detached two car garage, another detached garage, three storage
buildings, a metal shop, two horse stables with a pipe fence corral, one water well, a
windmill, several chicken coops, and other improvements. The trial court valued the
property at $35,610. This was the very same value placed upon it by Alta in her verified
inventory and appraisement, which document was received into evidence. See Vannerson
v. Vannerson, 857 S.W.2d 659, 671 (Tex. App.-Houston [1st Dist.] 1993, no writ) (holding
that the trial court could rely upon the contents of a sworn inventory when arriving at its
conclusions of law); Bailey County Appraisal Dist. v. Smallwood, 848 S.W.2d 822, 824
(Tex. App.-Amarillo 1993, no writ) (stating that an owner is qualified to testify about the
market value of his property). Furthermore, she represents (through her brief and verified
inventory and appraisement) that the $35,610 figure was the valuation assigned to the
parcel by the Hutchinson County Appraisal District in 1997 (three years prior to trial). 
Thus, some evidence appears of record supporting the trial court's valuation of the
property. 

 Yet, also of record is other evidence concerning the value of the tract. For instance,
Alta tendered an appraisal wherein the appraiser opined that the realty had a market value
of $80,000. He based his opinion upon comparable sales in the area. Next, a local real
estate agent represented that based on his inspection of the home and improvements, "we
could list [the] home for sale at an asking price of $125,000 and could probably get an
offer somewhere in that price range." Additionally, John valued the parcel from $125,000
to $150,000. As can be seen, this other evidence, including that of Alta's own appraiser,
valued the parcel at a sum far greater than that assigned by the local appraisal district
three years before trial. More importantly, authority has long recognized that "values
reflected by the tax rolls do not reflect actual value." Housing Authority v. Brown, 256
S.W.2d 656, 659 (Tex. Civ. App.-Dallas 1953, no writ). Given Brown, Alta's apparent
reliance on the local tax rolls when valuing the tract in her inventory and appraisement, the
trial court's obvious reliance on Alta's opinion, and the other evidence illustrating a value
at least twice as much as the dated valuation assigned the land by local tax rolls, we
conclude that the valuation placed on the land by the trial court is so against the great
weight and preponderance of the evidence as to make the valuation clearly wrong or
manifestly unjust. 

 In short, the evidence underlying the valuation is factually insufficient. Therefore,
the finding is erroneous. So too is it harmful. For instance, in addition to awarding the
tract to Alta, the trial court also entered a $12,000 judgment against John and in favor of
Alta "[f]or the purpose of a just and right division of property." Obviously, revaluation of
the five acre parcel would materially affect the sum, if any, John is obligated to pay Alta
to gain a just and right division of their estate. So, the error probably caused the rendition
of an improper judgment. Tex. R. App. P. 44.1(a)(1). And, because it did, we must remand
the entire community estate for a new division. Jacobs v. Jacobs, 687 S.W.2d 731, 732
(Tex. 1985) (holding that where error in part of the division of the marital estate materially
affects the trial court's just and right division of the entire estate, the reviewing court must
remand the entire community estate for a new division); In re Taylor, 992 S.W.2d 616, 621
(Tex. App.-Texarkana 1999, no pet.) (holding the same). 

 Having sustained that portion of issue four involving valuation of the five acre tract,
we need not consider the other aspects of the issue. Accordingly, we reverse that part of
the trial court's judgment that divides the community estate of John and Alta Scott and
remand the cause for further proceedings. In all other aspects, the judgment of the trial
court is affirmed.


 Per Curiam


1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 


="false" Name="Colorful Grid Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-00376-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



SEPTEMBER
23, 2010

 



 

RICKY BOLTON, JR.,

A/K/A RICKY JUNIOR BOLTON, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 108TH DISTRICT COURT OF POTTER
COUNTY;

 

NO. 58,354-E; HONORABLE DOUGLAS WOODBURN, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Ricky Bolton, Jr., appeals
his conviction for possession of a controlled substance, cocaine, less than one
gram.[1]  Appellant was sentenced to two years in a
State Jail Facility of the Texas Department of Criminal Justice
(SJF-TDCJ).  Appellant appeals the
judgment of the trial court contending that the evidence was legally and
factually insufficient to sustain the jurys verdict.  We affirm.

 

Factual and Procedural Background

            On
August 13, 2008, Officer Terry Moore of the Amarillo Police Department was
dispatched to a Tootn Totum
convenience store at 1400 East Amarillo Boulevard as part of a forgery
investigation.  Upon arriving at the Tootn Totum, Moore observed a
1999 Chevrolet Lumina containing two occupants parked in the parking lot.  When Moore pulled into the parking lot, both
occupants of the Lumina appeared to duck down. 
Upon obtaining information that the Lumina might have
been involved in the forgery incident, Moore and another officer, Scott Chappel, approached the Lumina in order to interview the
two occupants.  Appellant was
seated in the front passenger seat of the Lumina.  Chappel approached
the driver, and Moore went to the front passenger side to speak to appellant.

            As
Moore approached appellant, he noticed that appellant appeared to be
nervous.  When asked for identification,
appellant said he did not have any.  When
speaking to Moore, appellant would not make eye contact and spoke in such a low
tone that Moore had trouble understanding appellant.  Moore then asked appellant to step from the
vehicle and, instead of getting out of the vehicle, appellant took his left
hand and reached back towards his back left pocket.  Moore testified he thought appellant might be
going for a weapon.  Appellant was
ordered to show his hand, and, instead of showing his left hand as directed,
appellant reached down the right side of the seat with his closed right
hand.  As appellant made this second move
with his hand, Moore reached in through the window to grab appellants arm to
get control of the situation.  Appellant
kept his right hand tightly closed even as Moore delivered two blows to it in
an effort to force the hand open.  

            Eventually,
with the assistance of another officer, Moore pulled appellant from the
vehicle.  As appellant was being wrestled
to the ground, he still kept his right hand tightly closed.  While the police attempted to pull
appellants arms behind his back to apply hand-cuffs, Moore noticed appellant
make a throwing gesture with his right hand. 
Moore testified that he did not see anything fly out of appellants
hand; however, upon gaining control of appellant, Moore peered under the
vehicle toward which appellant made the throwing gesture.  Under the vehicle, Moore found a plastic
baggie of crack cocaine.  After appellant
had been secured, Moore checked the area around where appellant had been seated
and found a glass crack pipe stuffed between appellants seat and the
console.  Moore testified that this was
where appellant had reached with his left hand. 
After the cocaine was retrieved, it was placed in the property room of
the police department until it was taken to the Department of Public Safety
laboratory for testing.  

            Chappel testified that he did not see appellant make the
throwing gesture.  However, Chappel also testified that he remembered that, all during
the struggle to get appellant out of the vehicle, appellant kept his right hand
securely clinched.  Chappel
did recall that Moore commented on appellant making a throwing motion and that
the comment was made before the cocaine was found under the vehicle.

            The
jury convicted appellant and he was subsequently sentenced to serve two years
in a SJF-TDCJ.  Via two issues, appellant
contends that the evidence was legally and factually insufficient to link
appellant to the contraband discovered under the vehicle.  Disagreeing with appellant, we affirm the
trial courts judgment.

Standard of Review

When an
appellant challenges both legal and factual sufficiency, we are required to
conduct an analysis of the legal sufficiency of the evidence first and then, only
if we find the evidence to be legally sufficient, do we analyze the factual
sufficiency of the evidence. See Clewis
v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996).  In assessing the legal
sufficiency of the evidence, we review all the evidence in the light most
favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  See Jackson
v. Virginia, 443 U.S. 307, 319,
99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Hooper v.
State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). 
In conducting a legal sufficiency review, an appellate court may not
usurp the role of the factfinder; rather, our role on
appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally.  See Laster
v. State, 275 S.W.3d 512, 517 (Tex.Crim.App.
2009).   

            In a factual sufficiency review, we must consider all of
the evidence in a neutral light to determine whether a jury was rationally
justified in finding guilt beyond a reasonable doubt.  See
Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App.
2006).  In our analysis, we must
determine whether the evidence supporting the verdict is so
weak or so against the great weight and preponderance of the evidence as to
render the verdict manifestly unjust.  See Steadman v. State, 280 S.W.3d 242,
246 (Tex.Crim.App. 2009).  A wrong and unjust verdict includes instances
in which the jurys finding shocks the conscience[]
or clearly demonstrates bias.  See Grotti
v. State, 273
S.W.3d 273, 280 (Tex.Crim.App. 2008).  In a factual sufficiency review, we must be
mindful that a jury has already passed on the facts and must give due deference
to the determinations of the jury.  See Lancon
v. State, 253
S.W.3d 699, 704-05 (Tex.Crim.App. 2008).  If our decision is to set aside the verdict
of the jury, our opinion should clearly explain how the evidence supporting the
verdict is too weak on its own or how the contradicting evidence so greatly
outweighs the evidence in support of the verdict.  See
id. at 705.  Conversely,
if our decision is to uphold a verdict, we are required to consider the most
important evidence that the appellant claims undermines the jury's verdict and
explain why that evidence does not have the persuasive force the appellant
believes is sufficient to overturn the verdict. 
See Sims v. State, 99 S.W.3d 600,
603 (Tex.Crim.App. 2003).

            In a sufficiency of the evidence review, the essential
elements of the offense are those of a hypothetically correct jury charge for
the offense in question (i.e., one that accurately sets out the law and
adequately describes the offense for which the appellant was tried without
increasing the States burden of proof or restricting the States theory of
criminal responsibility).  See Hooper, 214 S.W.3d at 14; Malik
v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.
1997). 

            In
our review, we consider both direct and circumstantial evidence and all
reasonable inferences that may be drawn from that evidence.  See Hooper, 214 S.W.3d at 13.  Circumstantial evidence alone is sufficient
to establish the guilt of the accused, and the standard of review as to the
sufficiency of the evidence is the same for both direct and circumstantial
evidence cases.   See id.  Each fact need not point directly and
independently to the guilt of the accused, so long as the cumulative force of
all the evidence, when coupled with reasonable inferences to be drawn from that
evidence, is sufficient to support the conviction.  See id. 

Possession of a Controlled Substance

A conviction for possession of cocaine is supported only
when the defendant Aknowingly or intentionally possesses@ the drug.  Tex.
Health & Safety Code Ann. § 481.115(a) (Vernon 2010).  Proof of possession requires evidence the
accused exercised Aactual care, custody, control, or
management@ over the substance.  See id. § 481.002(38)
(Vernon 2010).  Thus, the State must
prove the accused (1) Aexercised care, custody, control, or
management over the [contraband]@ and (2) knew that
the substance Apossessed@ was
contraband.  See Martin v. State, 753 S.W.2d 384, 387 (Tex.Crim.App.
1988).

When the accused is not in exclusive control of the place
where the contraband is found, the State must establish care, custody, control,
or management by linking the accused to the substance through additional facts
and circumstances.  See Evans v. State, 202 S.W.3d 158,
161-62 (Tex.Crim.App. 2006); Poindexter v. State, 153 S.W.3d
402, 406 (Tex.Crim.App. 2005).  Whether the State=s evidence is
direct or circumstantial, its evidence of links must establish, Ato the requisite
level of confidence, that the accused=s connection with
the drug was more than just fortuitous.@  Poindexter,
153 S.W.3d at 405-06 (citing Brown
v. State, 911 S.W.2d 744, 747 (Tex.Crim.App.
1995)); Park v. State, 8
S.W.3d 351, 353 (Tex.App.BAmarillo
1999, no pet.).

  The many factors by
which an accused may, under the unique circumstances of each case, be
sufficiently Alinked@ to the
contraband, include: (1) the defendant=s presence when a
search is conducted; (2) whether the contraband is in plain view; (3) the
defendant=s proximity to and the accessibility of
the contraband; (4) whether the defendant was under the influence of contraband
when arrested; (5) whether the defendant possessed other contraband or
narcotics when arrested; (6) whether the defendant made incriminating statements
when arrested; (7) whether the defendant attempted to flee; (8) whether the
defendant made furtive gestures; (9) whether there was an odor of contraband;
(10) whether other contraband or drug paraphernalia were present; (11) whether
the defendant owned or had the right to possess the place where the drugs were
found; (12) whether the place where the drugs were found was enclosed; (13)
whether the defendant was found with a large amount of cash; and (14) whether
the conduct of the defendant indicated a consciousness of guilt. Evans, 202
S.W.3d at 162 n.12; See Triplett
v. State, 292 S.W.3d 205, 208 (Tex.App.BAmarillo
2009, pet. refd.)
(listing numerous factors).  These factors, however, are simply that:
factors which may circumstantially establish the sufficiency of evidence
offered to prove a knowing Apossession.@  See Evans, 202 S.W.3d at 162 n.12 (explaining
that factors Aare not a litmus test@).  It is not the number of links that is
dispositive, but rather the logical force of all the evidence.  See id. at 162.

 

 

 

Analysis

Appellant
contends that a lack of links to the contraband makes the evidence legally and
factually insufficient.  This is so,
according to appellant, because no one testified that they saw appellant
actually throw the baggie of cocaine later found beneath the car.  Appellants theory of the case continues
that, since Moore only saw a throwing motion, there is no link between
appellant and the later found baggie. 

Links

            The record before the Court contains the following facts
that link appellant to the contraband in question: 1) appellants conduct
indicated a consciousness of guilt in that he: a) slid down and tried to duck
down in his seat when the police arrived at the location of the forgery, b)
appeared nervous when Moore approached him, c) would not make eye contact with
Moore, d) replied to questions in such a low voice that Moore had difficulty
hearing him, and e) refused to exit the vehicle when ordered; 2) appellant made
a furtive gesture with his left hand; 3) appellant had his right fist closed and
refused to open it; 4) the closed fist was the hand with which appellant made
the throwing gesture; 5) the cocaine was found at a location which was in line
with the throwing gesture made by appellant; and 6) the glass crack pipe was
found between the seat appellant occupied and the console.  See id. at 162.

Legal Sufficiency

            When the links that tie appellant to the contraband are
examined, we are left with a significant amount of testimony connecting
appellant to the cocaine.  Remembering
that circumstantial evidence is as probative of the links required as is direct
evidence, we conclude that the links recited above are sufficient to legally
connect appellant to the contraband.  See
Hooper, 214
S.W.3d at 13.  Finally, we must be
mindful that it is not the number of links that are important but the logical
force of the links in question that is important.  Evans, 202 S.W.3d at 162. 
Because we find there are sufficient links to connect appellant to the
cocaine, the jury was acting as a rational factfinder
when it found appellant guilty beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Hooper, 214 S.W.3d at 13.  Appellants first issue is overruled.

Factual Sufficiency

            The same links that tie appellant to the cocaine in a
legal sufficiency review are present when the evidence is viewed in a neutral
light, as we must do when reviewing factual sufficiency issues.  Watson, 204 S.W.3d at 415.  Further, nothing about the jurys finding
shocks the conscience or clearly demonstrates bias.  See
Grotti,
273 S.W.3d at 280. 
Neither is the evidence so weak as to render the verdict manifestly
unjust.  See Steadman, 280 S.W.3d at 246. 
Simply stated, from appellants first contact with Moore, he sensed that
appellant was trying to hide something. 
Appellants actions in refusing to show his hands and then keeping the
right hand in a closed fist were indications that appellant had
contraband.  When we add to this the
throwing motion and finding the cocaine directly in line with where the
throwing motion indicated, we have factually sufficient evidence to connect
appellant with the cocaine.  Finally,
finding the glass crack pipe stuffed down between the seat and the console
where Moore observed appellant place his left hand further ties appellant to
the cocaine.  All of this evidence serves
as links to tie appellant to the cocaine. 
See Evans, 202 S.W.3d at 162.

            Appellant posits that since there
were other people in the parking lot that the evidence was insufficient to
connect appellant to the contraband.  See Sims, 99 S.W.3d at 603. 
The essence of appellants argument is that someone else could have
placed the cocaine on the ground under the car. 
When each officer was questioned about this, they all had basically the
same response: none of them had ever seen anyone simply place drugs on the
ground and walk away from the drugs.  The
jury heard all of this testimony and chose to believe that appellant tossed the
drugs under the car.  See Lancon, 253 S.W.3d at 704-05.  We cannot say that the jurys decision was
irrational when it found appellant guilty beyond a reasonable doubt.  See Watson, 204 S.W.3d at 417.  Accordingly, appellants second issue is
overruled.

Conclusion

            Having
overruled appellants issues, the judgment of the trial court is affirmed.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 








Do
not publish.  











[1]
See
Tex. Health & Safety Code Ann.
§ 481.115(b) (Vernon 2010).